HOOPER, Chief Justice
(concurring specially).
I have not changed my position as to the judgment in the Liability Phase. I would rather this Court reach its own conclusion than have it bound by the ruling of one trial judge. I do believe, however, that today’s ruling is reasonable and that it gives the legislature a reasonable opportunity to address the problem dealt with in the Liability Phase judgment. I therefore concur in today’s action denying rehearing and modifying the January 10,1997, judgment.
SEE, Justice (addressing motion to recuse).
The Harper Appellees assert that I should recuse myself, because the outcome of this litigation (the “Equity Funding Case”) could have a financial effect on a named plaintiff, the Alabama Disabilities Advocacy Program (“ADAP”). The Harper Appellees argue that because ADAP might be impacted by the outcome of this ease; because the ADAP clinical program is affiliated with the Univer *936 sity of Alabama School of Law; and because my wife and I are associated with the Law School, this litigation could have a substantial effect on me 'that - requires my recusal.[1] I disagree.
ADAP describes itself as “a statewide, independent program established to protect the rights of persons with disabilities ranging from developmental disabilities, manifesting themselves in childhood, to mental illness.” 2 Airmail: Alabama Disabilities Advocacy Program, October 1997, at 2. As I understand it, a large majority of ADAP’s funding comes from the federal government, and a small portion comes from a state appropriation to the University. ADAP is administered through the Law School’s clinical program and is under the administrative direction of the dean of the Law School. Because ADAP is an unincorporated program, it is, in a sense, an agency of the University.[2]
ADAP is a party to this litigation and may receive some portion of the legal fees, or other award, in this case. However, as I understand it, ADAP’s continued viability depends on its continued federal funding, not the outcome of this Equity Funding Case. Moreover, I understand that to the extent ADAP receives any legal fees from this litigation, those fees will not go to any other program of the Law School, including the payment of salaries for professors or for contract employees, such as legal writing instructors.
After being elected to the office of Associate Justice, I left a position as a tenured professor of law at the Law School and received a one-year leave of absence, which expires on December 23, 1997. I previously informed the dean of the Law School that I would not return, and I will not seek to renew or extend this leave of absence. In my current status as a professor on leave from the Law School, I do not attend faculty meetings or vote on faculty matters, nor do I receive any compensation or benefits. Any financial impact this litigation has on ADAP could not have a substantial effect on me. Therefore, my status as a professor on leave does not require my recusal. See Canon 3 C(1)(c), Ala.Can.Jud.Eth.; North Carolina Mut. Life Ins. Co. v. Holley, 538 So.2d 497, 504 (Ala.1987) (Adams, J., concurring specially) (stating that he was not required to re-cuse because of an insubstantial pecuniary interest in one of the parties); see generally In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir.1988) (stating that a judge’s impartiality is not brought into question when his interest in the litigation is remote, contingent, or speculative), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 *937 L.Ed.2d 1012 (1989); cf. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (stating that the failure of a Justice of this Court to recuse violated due process where his interest in the litigation was direct, personal, substantial, and pecuniary in nature).
My wife, Brenda Childs See, is a full-time contract employee of the Law School, serving as the director of legal writing.[3] She receives compensation from the Law School for her services. With respect to a similar situation in which a judge was to rule on a case involving the municipal employer of the judge’s spouse, the Judicial Inquiry Commission stated:
“A judge is not disqualified to preside over a case in which the city is named as a party merely because the judge’s spouse is employed as the library director for the city-county public library and is paid as a city employee. The judge would be disqualified if the judge’s spouse, by virtue of the spouse’s employment, had an ‘interest that could be substantially affected by the outcome of the proceeding.’ ”
Ala. JIC Op. 92-462. Accord Richard E. Flamm, Recusal and Disqualification of Judges § 8.6 (1996). It is my understanding that the impact of this litigation on ADAP, for the reasons set out above, will not have a substantial financial effect on the Law School or its compensation of my wife as a contract employee in the legal writing program. Thus, this employment relationship does not require my recusal.
In short, even if the outcome of this litigation has a financial impact on ADAP, the Harper Appellees have failed to demonstrate that such an impact would or even could, in turn produce a financial impact on the Law School that, in its turn, could have any substantial financial effect on me or my wife. Because there is no basis for my recusal, I do not recuse.

. Canon 3C.(1), Ala.Can.Jud.Eth., provides:
"(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:-
[[Image here]]
"(c) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.”
(Emphasis added.)
"Financial interest” is defined by Canon 3C.(3)(c) as: -
"[Ojwnership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:
"(i) Ownership in a mutual or common investment fund that holds securities is not a ‘financial interest’ in such securities unless the judge participates in the management of the fund;
"(ii) An office in an educational, religious, charitable, fraternal or civic organization or institution is not a ‘financial interest’ in securities held by the organization or institution
[[Image here]]
Neither my wife nor I own a "legal or equitable interest” in ADAP, nor does either of us serve "as director, advisor, or other active participant in [its] affairs.”

. Although ADAP may be an agency of the University, its interests are separate and distinct from those of the University, as shown by each entity’s attempt to intervene in this Equity Funding Case. ADAP’s motion to intervene on behalf of its disabled clients was granted by the trial court. The University’s motion to intervene was denied. 1 note that the Harper Appellees stated in their Brief in Opposition to Motion to Intervene of the Board of Trustees of the University of Alabama and Auburn University, that any interests the University has in this litigation "are not ‘direct,’ they are not ‘substantial,’ and they are not ‘legally protectable.’ ”

. My wife was the attorney for ADAP for the approximate period mid-1979 through mid-1981. Although this employment is alluded to in the "Affidavit of Martha Irene Morgan,” the Harper Appellees do not suggest that this employment, which terminated more than a decade before the initiation of this litigation, bars me from hearing this case.